UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| EDDIE KEEPER, | ) | CASE NO. 1:10 CV1071 |
| | ) | |
| Petitioner, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| HARLEY G. LAPPEN, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

On May 12, 2010, *pro se* petitioner Eddie Keeper filed the above-captioned Petition for Emergency Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. Mr. Keeper, who is confined at the Federal Satellite Location in Elkton, Ohio ("F.S.L. Elkton"), filed this petition against F.S.L. Elkton Warden J.T. Shartle and the Director of the Bureau of Prisons, Harley G. Lappen (sic).[1] Petitioner, whose projected release date is May 3, 2011, seeks an Order immediately releasing him to a halfway house for the remaining 12 months of his sentence. For the reasons stated below, the petition for writ of habeas corpus is **DISMISSED**.

*Background*

On December 21, 1993, a jury found petitioner guilty of violating 21 U.S.C. §§ 841 and 846. The district court sentenced him to 240 months in prison.

---

[1] The correct spelling of the Director's name is "Lappin."

While imprisoned at FSL Elkton, Mr. Keeper filed a Request for Administrative Remedy, dated November 4, 2009, asking for placement in a half-way house for 12 months. Four days later, a staff member advised petitioner he would be reviewed under the Second Chance Act during the next scheduled Program Review later in the month. Mr. Keeper next filed a Request for Administrative Remedy with Warden Shartle asking for his "paper work to be put in for 12 months halfway house this month." (Req. Adm. Rem. of 11/15/09.) The warden responded to petitioner in a letter dated December 7, 2009. Warden Shartle explained:

> Investigation into the matter indicates on November 24, 2009, the Unit Team considered you under the 'Second Chance Act of 2007' for a placement in a C.C.C. Specifically, the Unit Team reviewed the resources of the facility contemplated, the nature and circumstances of your offense, the history and characteristic of your institutional adjustment, as well as any potential statement of your sentencing court or pertinent policy statement issued by the United States Sentencing Commission. The Unit Team further considered your need for services, public safety, and the necessity of the Bureau of Prisons to manage its inmate population, as outlined in Program Statement 7310.04, <u>Community Corrections Center Utilization and Transfer Procedure</u>.

(Letter from Shartle to Keeper of 12/7/09.) Based on these considerations, the Unit Team recommended a C.C.C. placement of 150 - 180 days.

Petitioner appealed the warden's decision to the Regional Director. He argued the decision should be reversed because "both BOP's memorandas [sic] are in conflict with the intent of Congress. 42 U.S.C. 17541 provide incentives for prisoners participation in skill development programs, this include [sic] the maximum allowable period in a community confinement facility 12 months." (Reg. Adm. Rem. Ap. of 12/12/09.) This appeal was denied and petitioner filed an appeal with the Central Office. An acknowledgment, dated April 6, 2009, from the Central Office Administrative Remedy Coordinator indicates petitioner's appeal was received February 22, 2010. The office also requested an extension of time to respond until April 23, 2010. On April 26, 2009,

2

however, the Central Office requested another extension. Mr. Keeper challenged the request based on 28 C.F.R. § 542.14, alleging the regulation provides that an inmate should proceed as if an administrative request was denied if no response has been received by the due date. Accordingly, petitioner filed the above captioned petition 19 days after the date the Central Office response was due.

## ANALYSIS

Petitioner now argues he was not assessed by his Unit Team "with the understanding that Petitioner was eligible for the maximum of 12 months RRC placement. The April 14th Memorandum reference Program Statement 7310.04, directs the Unit Team not to review inmates with the understanding that inmates are eligble [sic] for the maximum of 12 months RRC placement." (Pet. at 4.) He maintains this is inconsistent with the Second Chance Act and "impermissibly constrains staff's descretion [sic] to designate inmate [sic] to a C.C.C. for a duration that will provide the greatest likelihood of successful reintergration [sic] into the community." *Id*. Moreover, he believes respondents failed to consider him for 12 months placement in accordance with the Second Chance Act because the "failed to show which one of the 5 criteria . . . prevented him from recieving [sic] the 12 month RRC placement." (Pet. at 6.)

A secondary argument raised by petitioner is that 42 U.S.C. § 17541 was created as part of the Second Chance Act to require the BOP to provide incentives for prisoners to participate

in skills development programs.² He alleges that denying him placement in a C.C.C. for 12 months would undermine the Act and is in contravention of Congressional intent.

INITIAL REVIEW

This matter is before the court for screening. 28 U.S.C. § 2243; *Harper v. Thoms*, No. 02-5520 2002, WL 31388736, at \*1 (6th Cir. Oct. 22, 2002). At this stage, allegations in the petition are taken as true and are liberally construed in petitioner's favor. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001). Because Mr. Keeper is appearing *pro se*, his petition is held to less stringent standards than those drafted by attorneys. *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). Considering all of these factors, however, it is apparent Mr. Keeper is not entitled to an award of the writ. *See* 28 U.S.C. §2243 ("judge [. . .] shall forthwith award the writ [. . .], unless it appears [. . .] person detained is not entitled thereto.")

---

²Beyond his conclusory allegation, Mr. Keeper does not explain how the BOP has violated this provision within the statute, which states:

>(a) In general
>
>The Attorney General, in coordination with the Director of the Bureau of Prisons, shall, subject to the availability of appropriations, conduct the following activities to establish a Federal prisoner reentry initiative:
>
>>(1) The establishment of a Federal prisoner reentry strategy to help prepare prisoners for release and successful reintegration into the community, including, at a minimum, that the Bureau of Prisons—[. . .]
>>
>>>(G) provide incentives for prisoner participation in skills development programs.

42 U.S.C. § 17541(a)(1)(G).

PRE-RELEASE COMMUNITY CONFINEMENT

As a threshold matter, Mr. Keeper challenges the respondents based on rules that are no longer in place. For the sake of clarity, the Court will outline the changes leading up to petitioner's current state of confinement.

The authority to designate where federal prisoners are confined is essentially based on two statutes. The first, 18 U.S.C. § 3621(b), states:

> The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets the minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, [. . .]
>
> In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another.

18 U.S.C. § 3621(b). The second relevant statute, 18 U.S.C. § 3624(c), charges the BOP with facilitating a prisoner's reentry into society. It states, in relevant part:

> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community.

18 U.S.C. § 3624(c).

Before December 2002, BOP policy allowed prisoners to be placed "'in a CCC for more than the 'last ten per centum of the term,' or more than six months, if appropriate." *Levine v. Apker*, 455 F.3d 71, 75 (2d Cir.2006) (quoting U.S. Dept. of Justice, Federal Bureau of Prisons Program Statement 7310.04 (Dec. 16, 1998)). In December 2002, the Department of Justice Office of Legal Counsel issued a memorandum announcing a "significant procedure change" in the BOP's

5

policy of placing offenders in C.C.C.s for all or a significant portion of their sentences. *United States v. Sherpa*, 251 F. Supp.2d 988, 990 (D. Mass. 2003) (internal quotation omitted).

The 2002 memorandum concluded that § 3621 did not confer general authority on the BOP to place an offender in a C.C.C. at any time or for any period of time. Instead, the Memorandum concluded the BOP's authority to place an offender in community confinement derived solely from § 3624(c), which limited the time an offender may be placed in a C.C.C. to the lesser of six months or ten percent of the offender's sentence. *See Woodall v. Bureau of Prisons*, 432 F.3d 235, 240 (3d Cir.2005).

The BOP adopted a new policy on December 20, 2002 to reflect the Office of Legal Counsel's position that inmates may only be released to community confinement for the last ten percent of their terms of imprisonment or six months, whichever is shorter. *See id.* This policy prompted a flood of lawsuits from convicted offenders challenging its validity. Ultimately, the First and Eighth Circuit Courts of Appeals found the 2002 policy unlawful because it limited the BOP's discretion to transfer offenders to a C.C.C., thus restricting transfer only to the last 10 % of an offender's sentence or six months and contradicting the plain meaning of § 3621(b), which grants general authority to the BOP to transfer prisoners at any time during their term of incarceration after an individualized determination of the appropriateness of a transfer based upon certain enumerated factors. *Elwood v. Jeter*, 386 F.3d 842 (8th Cir. 2004); *Goldings v. Winn*, 383 F.3d 17 (1st Cir. 2004).

Effective February 14, 2005, the BOP adopted a new set of rules regulating C.C.C. placement in response to the courts' decisions. The regulations, 28 C.F.R. §§ 570.20 and 570.21, were announced as a "categorical exercise of discretion [by the BOP] for designating inmates to community confinement." 28 C.F.R. § 570.20. The regulations categorically denied C.C.C.

placement to any inmate not in the lesser of the last 10 % or six months of his sentence, except under certain limited, enumerated circumstances:

> (a) The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months.
>
> (b) We may exceed these time-frames only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority for example, residential substance abuse treatment program (18 U.S.C. § 3621(e)(2)(A)), or shock incarceration program (18 U.S.C. § 4046(c)).

28 C.F.R. § 570.21. Several district courts in this circuit held the BOP's policy of categorically excluding placement in community confinement until the last ten percent or six months of a prisoner's sentence was contrary to congressional intent and that the BOP must apply the factors in 18 U.S.C. § 3621(b) when considering C.C.C. placement. *See Luckett v. Eichenlaub*, No. 07-10118, 2007 WL 3124666 (E.D. Mich. Oct. 24, 2007); *Halter v. Eichenlaub*, No. 2:07-CV-11072, 2007 WL 2873944 (E.D. Mich. Sept. 25, 2007); *Weirup v. Eichenlaub*, No. 2:07-10672, 2007 WL 2300715 (E.D. Mich. Aug.7, 2007); *Holloway v. Marberry*, No. 2:06-12516, 2007 WL 1880386 (E.D. Mich. June 27, 2007).

## SECOND CHANCE ACT OF 2007

In the midst of these challenges, Congress amended 18 U.S.C. § 3624(c)(1) through the enactment of the Second Chance Act of 2007 ("the Act"), 42 U.S.C. § 17501, effective April 9, 2008. The Act amended § 3624(c)(1) to provide the BOP Director shall "ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." Second Chance Act, Pub. L. 110-199, § 251, 122 Stat. 660, 692 (2008).

In accordance with the Act, the BOP issued an interim policy memorandum on April 14, 2008 to address RRC placement considerations. The memorandum stated that the "categorical timeframe limitations on prerelease community confinement" found in 28 C.F.R. §§ 570.20 and 570.21 (i.e., the ten percent limit that Petitioner challenges in this petition) "are no longer applicable and must no longer be followed." The memorandum further requires that RRC placement decisions be made on an individual basis with reference to the five-factor criteria set out in section 3621(b). Inmates previously denied RRC placement were to be reconsidered under the standards set out in the memorandum. *See Montes v. Sanders*, 2008 WL 2844494, at *1 (C.D. Cal. July 22, 2008);*see also Miller v. Whitehead*, 527 F.3d 752, 755 (8th Cir. 2008) ("In reaction to this statute, and the new 12-month maximum placement, the BOP issued guidance directing that 'inmates must now be reviewed for pre-release RRC placements 17-19 months before their projected release dates.'")

The BOP's website indicates Mr. Keeper's release date is May 3, 2011. http://www.bop.gov. Eighteen months before this date, his Unit Team met to determine his eligibility for C.C.C. placement. At that time, the Team determined 150-180 days placement would be appropriate. As Warden Shartle explained, the Team took into consideration the BOP's interim policy memorandum on C.C.C. placement consideration, which was dictated by the newly enacted statute. The policy requires C.C.C. placement decisions be made on an individual basis with reference to the five-factor criteria set out in 18 U.S.C. § 3621, which provides as follows:

> The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau,. . .  that the Bureau determines to be appropriate and suitable, *considering*--
> > (1) the resources of the facility contemplated;
> > (2) the nature and circumstances of the offense;
> > (3) the history and characteristics of the prisoner;
> > (4) any statement by the court that imposed the sentence--

>(A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>(B) recommending a type of penal or correctional facility as appropriate; and
>(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b) (emphasis added). What petitioner ignores, and what the BOP first addressed, is the fact that it must consider the factors set forth in 18 U.S.C. § 3621(b) before a prisoner is even considered eligible for transfer to a C.C.C.

Based on the facts alleged, the BOP considered all relevant factors set forth in the statute. The fact that its analysis was not as explicit as petitioner requested does not render respondents in violation of the Second Chance Act. Contrary to Mr. Keeper's statement, the facts reveal he was considered for C.C.C. placement between 17 and 19 months before his scheduled release date. All the factors set forth in § 3621 were considered, as explained by Warden Shartle on December 7, 2009. Moreover, the categorical 10 percent limitation (previously in effect under 28 C.F.R. § 570.21) to which Mr. Keeper alludes was invalidated by the Second Chance Act and the BOP's memorandum instituting an interim policy conforming to the Act. Petitioner has received, through legislative and administrative action, all of the relief to which he might have been entitled had such action not been taken.

Finally, to the extent petitioner argues his constitutional rights are being violated because respondents have failed to place him in a C.C.C. for 12 months, he has no constitutional right to serve his sentence in a facility more to his choosing. Congress has vested the BOP "with the right to exercise complete and absolute discretion in matters relating to the incarceration and classification of lawfully convicted prisoner." 18 U.S.C. § 3621; *Moody v. Daggett*, 429 U.S. 78, 88 (1976); *Beard v. Livesay*, 798 F.2d 874 (6th Cir. 1986). There is no constitutional or inherent

9

right of a convicted person to be released before the expiration of a valid sentence. *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1, 7 (1979).

Petitioner has no due process right, protected by the Fifth Amendment, to be placed in a CCC earlier than the date on which the BOP assigns him--as long it has considered the factors set forth in § 3621(b) as required by the Act. The statute was enacted on April 9, 2008. Mr. Keeper submitted his BP-229 on November 15, 2009, 19 months after enactment of the statute. As stated in Warden Shartle's letter denying petitioner's request, all of the factors set forth in § 3621(b) were applied to the specifics of petitioner's case as required by the new statute.

## CONCLUSION

For the foregoing reasons, this action is **DISMISSED** pursuant to 28 U.S.C. § 2243.[3] The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[4]

**IT IS SO ORDERED**.

Dated: May 18, 2010

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[3] The statute provides, in relevant part:

\* \* \*

> A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ . . . , *unless it appears from the application that the applicant or person detained is not entitled thereto.*

28 U.S.C. § 2243 (emphasis added).

[4] 28 U.S.C. § 1915(a)(3) provides: "An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith."